In the Matter of EDGAR T. APPLEBY, as Executor of EDGAR S. APPLEBY, Deceased, Petitioner, against SPENCER E. BATES et al., Constituting the Tax Commission of the State of New York, Respondents.

Third Department, March 7, 1951.

*Morton C. Fitch, Lawrence R. Condon* and *John B. Coman* for petitioner.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown, Solicitor-General,* and *John C. Crary, Jr.,* of counsel), for respondents.

BERGAN, J.  In 1943, the estate of Edgar S. Appleby owned a one-half interest in a mortgage of $283,333 on the Jolson Theatre at 7th Avenue and 59th Street, New York.

Mr. Appleby died in 1936.  His family had acquired an interest in this property more than fifty years ago and had continued it either as mortgagees or owners of the title.  Control of this and other real property interests of the deceased was continued by his son who was his executor.

In 1943, the Jolson Theatre mortgage was foreclosed; the property sold for $150,000 gross, and the payment of tax arrearages and other charges brought the total loss, based on the balance due on the mortgage debt, to $246,955 of which the estate's share was $123,477.

In an amended fiduciary State income tax return for 1943, the executor charged $119,196 of this as a " business loss " and reported that no income tax was due. The Tax Commission disallowed this on the ground it was a "capital loss " not deductible from gross income (Tax Law, § 360, subds. 4, 6), but could be used only to offset capital gains (§ 350, subd. 16).

The executor argues that the loss was incurred in the conduct of business; that the estate which was " greatly involved in real estate " has continued the real estate business in which the decedent had been engaged to obtain liquid funds to pay the Federal estate taxes.

What the Legislature meant by " capital assets " for this purpose is expressed in subdivision 12 of section 350 of the First of all, a capital asset is property " held by the taxpayer ". Tax Law. Definition is by a method of inclusion-exclusion. This is a very broad and inclusive concept. In a parenthetical phrase this embraces property whether or not " connected with " trade or business. There follows a series of exclusions from the broad definition, two of which are, " land used " and " property used " in " the " trade or business.

The key to the language of exclusion is the words " used in " related to the trade or business of the taxpayer. This, of course, means that the land or other property has a utilization incidental to a business operation. The dependent relationship of " land " to " trade or business " is evident in the way the words are employed.

It cannot mean, as used here, land held for the purpose of income derived from the land itself, in which the operation, i.e., the " business " of the taxpayer is merely to do what is needed to be done to collect the income from the land.

This is demonstrated by the parenthetical language of inclusion within the term " capital assets " appearing earlier in subdivision 12, which gathers into its definitive sweep property " whether or not connected with " the trade or business.

It is the usual concomitant of real estate ownership that a man has trouble in keeping it going. He calls a plumber, a painter or a roofer, seeks good tenants and litigates with bad ones. But all this trouble does not change the capital nature of the property itself as this tax statute has undertaken to define it.

A large holder of real estate has his troubles multiplied but the character of what he does is the same, and, of course, an executor in this respect is on the same footing with anyone

else. What he works with is a capital asset and his taxable profit or loss on its sale falls into that tax category.

The executor himself described what he did about the real estate under his care and it seems to us he did what is customary: "We did the general management of collecting rents and making repairs. * * * We had to hire roofers".

Even if active trading in real estate might be treated differently, no such activity is here. The interest in the particular property involved was acquired many years ago, "prior to 1900"; the decedent had obtained it in turn "from his father"; it was acquired before the executor was born and how it was originally acquired he did not know. No other property was either acquired or sold by the executor for the estate during its administration.

Without any statutory implementation, a gain or loss on such a piece of land would be what most lawyers would treat as a capital gain or loss in the classic sense. We are not bound where our tax policy may differ by the way the United States may have treated the property for tax purposes.

The determination should be confirmed, with $50 costs and disbursements.

FOSTER, P. J., HEFFERNAN, BREWSTER and COON, JJ., concur.

Determination confirmed, with $50 costs and disbursements.

[See *post*, p. 985.]